**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**OCALA DIVISION**

**ROBERT COURTEMANCHE, JR.,**

    Petitioner,

-vs-                                                           Case No.  5:12-CV-69-OC-27PRL

**SECRETARY, DEPARTMENT**
**OF CORRECTIONS,**

    Respondent.
_____/

## ORDER

      Petitioner, an inmate of the Florida penal system, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 ("petition") challenging his convictions for trafficking in methamphetamine, possession of listed chemicals, and possession of cannabis entered in 2007 by the Fifth Judicial Circuit Court, Marion County, Florida (Dkt. 1). Respondent initially filed a response to the petition, arguing that the petition should be dismissed as untimely (Dkt. 6). This Court concluded that the petition was timely filed and directed Respondent to file a response to the merits of Petitioner's claims (Dkt. 10). Respondent has filed a response to the petition (Dkt. 11). Although Petitioner was given an opportunity to file a reply, he has not done so.

      Petitioner alleges twelve claims: 1) the trial court erred by admitting evidence of collateral crimes at trial; 2) the trial court erred by denying his motion for mistrial; 3) the trial court abused its discretion by admitting his letter into evidence; 4) the prosecutor made improper comments during closing argument; trial counsel was ineffective for failing to 5) present argument that the letter was offered as mitigation evidence; 6) adequately advise him not to submit the letter to the trial court and

state attorney; 7) investigate and discover that State witnesses were going to testify as expert witnesses; 8) object to the State's failure to disclose Eddie Valez as an expert witness; 9) object to the State's failure to disclose Timothy Lipitore as an expert witness; 10) call Michael Hatfield as a witness at the motion in limine hearing; 11) investigate and obtain the deposition of Andy Harris prior to trial; and 12) appellate counsel was ineffective for failing to argue that his minimum mandatory sentence was improper.

## PROCEDURAL HISTORY

Petitioner was charged by Information with trafficking in more than two hundred grams but less than four hundred grams of methamphetamine (count one), possession of a listed chemical (count two), and possession of twenty grams or less of cannabis (count three) (Respondent's Ex. A). After a jury trial on October 15, 2007, through October 18, 2007, Petitioner was found guilty as charged (Resp. Exs. B & Y). Petitioner was sentenced to a fifteen-year minimum mandatory sentence to be followed by a four-year term of probation for count one, to a two-year term of imprisonment for count two, and to time-served for count three (Resp. Ex. Z). The state appellate court affirmed Petitioner's convictions and sentences (Resp. Ex. H); *Courtemanche v. State*, 24 So. 3d 770 (Fla. 5th DCA 2009). Petitioner moved for discretionary review, and the Supreme Court of Florida declined to accept jurisdiction (Resp. Exs. K & M).

Petitioner filed a Motion for Post Conviction Relief pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure in which he alleged seven grounds for relief (Resp. Ex. N). After the State responded (Resp. Ex. P), the state court summarily denied the 3.850 motion (Resp. Ex. Q). The state appellate court affirmed *per curiam* (Resp. Ex. U); *Courtemanche v. State*, 63 So. 3d 778 (Fla. 5th DCA 2011) (table).

Petitioner also filed a successive 3.850 motion in which he alleged one claim (Resp. Ex. AA). The state court denied the motion (Resp. Ex. BB). Petitioner did not appeal the denial of his successive 3.850 motion.

On February 1, 2012, Petitioner filed the instant federal habeas petition in this court (Dkt. 1).

## STANDARDS OF REVIEW

Under 28 U.S.C. § 2254(d) and (e) as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), this court's review of the state court's factual findings is highly deferential. Those findings are presumed to be correct unless rebutted by clear and convincing evidence. Similarly, the state courts' resolutions of issues of law-including constitutional issues-must be accepted unless they are found to be "contrary to" clearly established precedent of the Supreme Court of the United States or involved an "unreasonable application" of such precedent. *Williams v. Taylor*, 529 U.S. 362 (2000). It is not enough that the federal courts believe that the state court was wrong; it must be demonstrated that the state court decision was "objectively unreasonable." *Id. Breedlove v. Moore*, 279 F.3d 952 (11th Cir. 2002). "Under § 2254(d), a habeas court must determine what arguments or theories supported. . .the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court." *Wetzel v. Lambert*, 132 S.Ct. 1195, 1198 (2012) (citing *Harrington v. Richter*, 131 S.Ct. 770, 786 (2011)).

**Ineffective Assistance of Counsel**

To have a facially valid claim alleging ineffective assistance of counsel, Petitioner must meet the two-part test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland*'s two-part

test requires Petitioner to demonstrate that counsel's performance was deficient and "there was a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. However, if a claim fails to satisfy the prejudice component, the court need not make a ruling on the performance component. *Id*. at 697.

"Surmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 130 S. Ct. 1473, 1485 (2010). "Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult." *Harrington v. Richter*, 131 S. Ct. at 788. As the *Richter* Court explained:

> The standards created by *Strickland* and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is "doubly" so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Id*. (citations omitted).

**Procedural Default**

A § 2254 application cannot be granted unless a petitioner "has exhausted the remedies available in the courts of the State. . . ." 28 U.S.C. 2254(b)(1)(A); *Snowden v. Singletary*, 135 F.3d 732, 735 (11th Cir. 1998). In other words, the state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition. *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). *See also, Henderson v. Campbell*, 353 F.3d 880, 891 (11th Cir. 2003) ("A state prisoner seeking federal habeas relief cannot raise a federal constitutional claim in federal court unless he first properly raised the issue in the state courts.") (quoting *Judd v. Haley*, 250 F.3d 1308, 1313 (11th Cir. 2001)); *Duncan v. Henry*, 513 U.S. 364 (1995) ("[E]xhaustion of

state remedies requires that the state prisoner 'fairly present' federal claims to the state courts in order to give the State the 'opportunity to pass upon and correct alleged violations of its prisoners' federal rights[.]'") (citation omitted).

Under the procedural default doctrine, "if the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice exception is applicable." *Smith v. Jones*, 256 F.3d 1135, 1138 (11th Cir. 2001). "The doctrine of procedural default was developed as a means of ensuring that federal habeas petitioners first seek relief in accordance with established state procedures." *Henderson*, 353 F.3d at 891 (quoting *Judd v. Haley*, 250 F.3d at 1313).

Pre-AEDPA decisions from the Supreme Court establish the framework governing procedural default in federal habeas cases. A procedural default will only be excused in two narrow circumstances. First, Petitioner may obtain federal habeas review of a procedurally defaulted claim if he shows both "cause" for the default and actual "prejudice" resulting from the default. "Cause" ordinarily requires Petitioner to demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in the state court. *Henderson*, 353 F.3d at 892; *Marek v. Singletary*, 62 F.3d 1295, 1302 (11th Cir. 1995).

To show "prejudice," Petitioner must show "not merely that the errors at his trial created a possibility of prejudice, but that they worked to his factual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Hollis v. Davis*, 941 F.2d 1471, 1480 (11th Cir. 1991) (quoting *United States v. Frady*, 456 U.S. 152, 170 (1982)). Petitioner must show that there is at least a reasonable probability that the result of the proceeding would have been different.

*Henderson*, 353 F.3d at 892.

Second, Petitioner may obtain federal habeas review of a procedurally defaulted claim, without a showing of cause or prejudice, if review is necessary to correct a fundamental miscarriage of justice. *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Henderson*, 353 F.3d at 892. This exception is only available "in an extraordinary case, where a constitutional violation has resulted in the conviction of someone who is actually innocent." *Henderson*, 353 F.3d at 892. The fundamental miscarriage of justice exception concerns a petitioner's "actual" innocence rather than his "legal" innocence. *Johnson v. Alabama*, 256 F.3d 1156, 1171 (11th Cir. 2001) (citing *Calderon v. Thompson*, 523 U.S. 538, 559 (1998)). To meet this standard, a petitioner must "show that it is more likely than not that no reasonable juror would have convicted him" of the underlying offense. *Schlup v. Delo*, 513 U.S. 298, 327 (1995). In addition, "'to be credible,' a claim of actual innocence must be based on [new] reliable evidence not presented at trial." *Calderon*, 523 U.S. at 559 (quoting *Schlup*, 513 U.S. at 324) (explaining "given the rarity of such evidence, in virtually every case, the allegation of actual innocence has been summarily rejected") (internal quotation marks omitted).

## DISCUSSION

**Grounds One, Two, Three, and Four**

In Ground One, Petitioner contends the trial court erred by admitting evidence of a collateral crime at trial (Dkt. 1 at 5). In Ground Two, Petitioner alleges the trial court erred by denying his motion for mistrial after the State commented on his right to remain silent. *Id.* at 6. Petitioner argues in Ground Three that the trial court erred by admitting a letter into evidence at trial. *Id.* at 9. Finally, Petitioner asserts in Ground Four that the prosecutor made improper comments during closing argument. *Id.* at 11.

6

Respondent argues that Grounds One, Two, Three, and Four are unexhausted and procedurally barred (Dkt. 11 at 10-13).  The Court agrees with Respondent that these grounds are unexhausted.  Although Petitioner raised these claims on direct appeal, Petitioner did not cite to federal law or the United States Constitution when arguing the claims in the state court (Resp. Ex. E).  *See Anderson v. Harless*, 459 U.S. 4, 5-6 (1982) ("It is not enough that all the facts necessary to support the federal claims were before the state courts or that a somewhat similar state-law claim was made."); *Snowden v. Singletary*, 135 F.3d 732, 735 (11th Cir. 1998) (holding a petitioner must apprise the state court of the federal constitutional issue and not just the underlying facts of the claim or a similar state law claim).  Petitioner's failure to present the federal component of Grounds One through Four on direct appeal deprived the state court of a "full and fair opportunity to resolve any constitutional issues. . . ." *Boerckel*, 526 U.S. at 845.  Consequently, the exhaustion requirement is not satisfied.  *Henry*, 513 U.S. at 365.

The Court is precluded from considering these claims because they would be procedurally defaulted if Petitioner returned to the state court.  *Smith v. Sec'y, Dep't of Corr.*, 572 F.3d 1327, 1342 (11th Cir. 2009) (citing *Snowden*, 135 F.3d at 736) ("[W]hen it is obvious that the unexhausted claims would be procedurally barred in the state court. . . we can forego needless 'judicial ping-pong' and just treat those claims now barred by state law as no basis for federal habeas relief.")).  Petitioner could not return to the state court to raises these grounds because he has already filed a direct appeal.  Therefore, Petitioner's claims are procedurally defaulted.

Furthermore, Petitioner fails to demonstrate any cause and prejudice excusing his default.  *Carpenter*, 529 U.S. at 451.  Nor does he allege or demonstrate that the fundamental miscarriage of justice exception applies.  *Henderson*, 353 F.3d at 892.  Because Petitioner fails to proffer specific

facts showing an exception to procedural default, Grounds One, Two, Three, and Four are procedurally barred from federal review.

**Grounds Five, Six, and Ten**

Petitioner contends in Ground Five that trial counsel was ineffective for failing to present argument that the letter introduced into evidence was not an unsolicited statement of culpability but instead was offered as mitigation testimony associated with the upcoming sentencing (Dkt. 1 at 12). In Ground Six, Petitioner alleges that trial counsel was ineffective for failing to adequately advise him not to submit his letter to the trial court or state attorney. *Id.* at 16. Finally, in Ground Ten Petitioner asserts that trial counsel was ineffective for failing to call Michael Hatfield ("Hatfield") as a witness during the motion in limine hearing held regarding the admissibility of his letter. *Id*. at 23. In support of this claim, Petitioner contends that Hatfield would have testified that Petitioner offered his letter in contemplation of the plea agreement. *Id.*

Petitioner initially agreed to enter into a negotiated guilty plea in this case pursuant to the advice of his attorney, Hatfield (Dkt. 1 at 13).[1] A plea hearing date was set for July 30, 2007. *Id.* On July 27, 2007, Petitioner signed a letter drafted by his mother which stated the following:

> Dear Ms. Berndt and Judge Lambert, with respect I would like to say something on my behalf. I have been told you would not meet with me or anyone on my behalf except for my lawyer. He tells me that you are very hard to agree a meeting [sic].
>
> I'm 30 years old and I have a great five-year old daughter and a loving and caring wife and family. I realize now that I have a clear mind and not clouded with drugs, yes, I made very stupid mistakes and I admit that I was killing my brain. But I never would hurt anyone or anything. I'm begging for a chance to prove to you and the community that first time offender can change no matter what their age and become a worthwhile citizen. I would like to prove I can pick up much better people

---

[1]The negotiated plea provided for a ten-year sentenced in exchange for a guilty plea as charged. *Id.*

> to socialize with.
>
> But my main concern is to prove and be a part of my loving family that cares and loves for me [sic]. I admit when my brain was so clouded with drugs I was the worst person toward the family that cares. I would like a chance to prove to you and to them that I can do this. I'm pleading for you [sic] understanding in this. I would also like to say it feels great to have a clear head. I feel I deserve a chance like others have had.
>
> I am also willing to turn in other people and my family is willing to help, too. I'm sorry and apologize to the Court for all the trouble that I have caused. I also very much apologize to my family for all the hurt that I caused them.

(Resp. Ex. Y at 401-02). This letter was given to the trial court and state attorney. *Id.* At the July 30, 2007 hearing, Petitioner elected to forego entering the negotiated plea (Dkt. 1 at 13). Petitioner also discharged his attorney. *Id.* Charles Holloman ("Holloman") later appeared as counsel for Petitioner. *Id.*

On the morning of trial, the state court held a hearing on Petitioner's motion in limine to prohibit the introduction of his letter at trial (Resp. Ex. Y at 135-36). Holloman argued that the letter was inadmissible because it was not an unsolicited letter but instead was written as mitigation testimony in contemplation of the negotiated plea that was never entered. *Id.* at 141. Petitioner testified at the motion in limine hearing and stated that he wrote the letter after he received the audio and videotape evidence that he had not previously had a chance to review. *Id.* at 151-52. The trial court denied the motion in limine and ruled that the letter was admissible. *Id.* at 155.

During trial, Hatfield was called as a witness to identify the letter. *Id.* at 334. Hatfield testified, outside the presence of the jury, that Petitioner gave him a letter and indicated he wished for Hatfield to give the letter to the prosecutor and state court. *Id.* at 342. Hatfield further stated that the letter:

9

> [W]as in the context of the fact that we had already filed a plea agreement the week before . . . . One of my concerns is the inference and the substantial prejudice it may cause to my former client. And the fact that it was done in light – connected to the fact that I anticipated a qualification of the plea at the time, that's the atmosphere in which this took place.

*Id.* at 343. Hatfield offered the letter to the state court and the prosecutor because the letter was to be used in association with Petitioner's guilty plea. *Id.* at 343.

Petitioner testified that he was a methamphetamine addict but did not manufacture methamphetamine. *Id.* at 402-05. Petitioner also stated that his friend Andy Harris ("Harris") manufactured the methamphetamine in his shed. *Id.* On cross-examination, Petitioner explained that when he stated in his letter he had made a stupid mistake, he meant that he made a mistake by letting Harris use his shed to manufacture methamphetamine. *Id.* at 427.

Petitioner raised these claims in his 3.850 motion (Resp. Ex. N). The state court addressed the three claims together, and noted that Petitioner raised the issue of the admissibility of the letter on direct appeal (Resp. Ex. Q). The Fifth District Court of Appeal found that Petitioner's letter was not drafted "in accordance with any negotiations pertaining to his decision to enter into a plea deal, but rather, the confession letter was an unsolicited, unilateral utterance." *Courtemanche*, 24 So. 3d at 774. The state court concluded that Petitioner was not entitled to relief on Ground Five because the issue of whether the letter was admissible was decided on direct appeal (Resp. Ex. Q). Further, the court stated that Petitioner's claim was refuted by the record because counsel did argue that the letter was offered in mitigation as part of the plea and not as a confession letter. *Id.*

With regard to Ground Six, the state court found that Petitioner had not shown prejudice because counsel did confer with Petitioner regarding the letter prior to giving it to the state court. *Id.* Finally, the state court concluded that Petitioner was not entitled to relief on Ground Ten because

the failure to call Hatfield during the motion in limine proceedings did not result in prejudice. *Id.* The state court found that even if Hatfield has testified prior to the commencement of trial, his testimony would not have changed the court's ruling on the matter. *Id.*

Petitioner has not demonstrated that he is entitled to relief on his claims. First, the Court concludes that Ground Five is refuted by the record. Counsel did argue that the letter was offered as mitigation in contemplation with the plea agreement. Therefore, Petitioner's failure to establish deficient performance precludes relief on this claim.

With regard to Ground Six, Hatfield testified that he conferred with Petitioner regarding the letter, and tendered the letter to the court and prosecutor at Petitioner's insistence because a negotiated plea had been reached. It is unclear how counsel could have further advised Petitioner with respect to this matter when Hatfield did not know that Petitioner would then refuse to enter the negotiated plea. Furthermore, even if counsel's actions in failing to advise Petitioner that this letter could later be admitted at trial, there is no indication that prejudice resulted.

Eddie Valez ("Valez"), a special agent with the Florida Department of Law Enforcement ("FDLE"), testified that Petitioner's shed, located on the property where Petitioner resided with his wife and child, contained a laboratory for making methamphetamine (Resp. Ex. Y at 253). Valez admitted on cross-examination that he did not conduct any surveillance on the shed and did not know who was entering the shed. *Id.* at 257-58. Dana Courtemanche ("Courtemanche"), Petitioner's wife, testified that Petitioner constructed the shed on their property. *Id.* at 263. Courtemanche was never inside the shed and stated that it was secured by a combination padlock to which she did not have the combination. *Id.* at 264. Courtemanche testified that Petitioner went into this shed a "couple" times each day. *Id.*

Timothy Lipitore ("Lipitore"), deputy sheriff with the Marion County Sheriff's Office, assisted with the investigation by taking photographs and collecting evidence in and around the shed. *Id.* Lipitore specifically testified regarding surveillance cameras which were strategically placed outside of the shed on Petitioner's property which had wires that led to a television set inside the shed. *Id.* at 275-77. Additionally, Lipitore testified that he collected two "baggies" of what he suspected was marijuana based on how it looked and smelled. *Id.* at 278-79. Lipitore also found a bag of what he suspected was methamphetamine in a toolbox outside the shed. *Id.* at 286-87.

Tina Ringfeld ("Ringfeld"), a latent fingerprint examiner for the Ocala Police Department, testified that a latent fingerprint taken from a bag of methamphetamine matched Petitioner's fingerprints. *Id.* at 305-08. Yancy Isaacs ("Isaacs") and George Whalen ("Whalen"), both employed by the Lake County Sheriff's Department, testified that when they arrested Petitioner, they found a cigarette package that contained bags of a white powdery substances, or methamphetamine. *Id.* at 322-25, 327-331. Finally, Petitioner testified that while he was using methamphetamine, he never manufactured methamphetamine in his shed. *Id.* at 403-05. Petitioner stated that Harris was responsible for manufacturing the methamphetamine found in his shed. *Id.* at 405, 412-14.

After reviewing the evidence presented at trial, the Court concludes Petitioner cannot demonstrate that but for counsel's actions that the result of the proceeding would have been different. Even without the introduction of the letter, there was substantial evidence of Petitioner's guilt presented at trial. Therefore, Ground Six is denied.

Finally, Petitioner has not shown that he is entitled to relief on Ground Ten. Although Hatfield was not called as a witness prior to the commencement of trial, Hatfield did proffer testimony during trial. Hatfield testified that Petitioner's letter was not offered as a gratuitous

confession but instead was written in contemplation of the plea agreement. *Id.* at 343. The trial court heard this testimony but concluded that it did not need to reconsider its ruling on the motion in limine. Therefore, Petitioner cannot demonstrate that had this testimony been offered at the beginning of trial that the trial court would have ruled in a different manner. Consequently, Petitioner is not entitled to relief on this claim because he has not shown that the state court's finding was contrary to, or resulted in an unreasonable application of, clearly established federal law.

**Grounds Seven, Eight, and Nine**

Petitioner alleges in Ground Seven that trial counsel was ineffective for failing to conduct an adequate pretrial investigation regarding critical State witnesses (Dkt. 1 at 17). Petitioner states that had counsel adequately investigated the State witnesses, he would have discovered that Valez, Lipitore, and Ringfeld were not identified as expert witnesses despite the State's intention to offer expert testimony through these witnesses. *Id.* In Grounds Eight and Nine Petitioner claims that trial counsel was ineffective for failing to object to the when the State committed a discovery violation. *Id.* at 20-21. In support of these claims, Petitioner contends that the State failed to disclose Valez and Lipitore as expert witnesses. *Id.*

Petitioner raised these claims in his 3.850 motion (Resp. Ex. N), which the state court summarily denied (Resp. Ex. Q). In denying these grounds, the state court found that even if counsel was deficient for failing to investigate or object that these witnesses were not listed as expert witnesses, no prejudice resulted from their testimony. *Id.* at 10-14.

The State filed a discovery exhibit on December 20, 2006, which included a list of witnesses it intended to call at trial (Resp. Ex. N). The exhibit listed Valez and Lipitore as category "A"

13

witnesses.[2] *Id.* The State's discovery exhibit and supplemental discovery exhibits did not disclose Ringfeld as a witness. *Id.*

Rule 3.220(b)(1)(A)(i)(7) of the Florida Rules of Criminal Procedure provides that the prosecutor must provide, within fifteen days after service of a notice of discovery, a list of names and addresses of witnesses, including "expert witnesses who have not provided a written report and a curriculum vitae or who are going to testify to test results of give opinions that will have to meet the test set forth in *Frye v. United States*, 293 F. 1013 (D.C. Cir. 1923)."[3] Florida law states that merely listing a witness as a category "A" witness, without notation that the witness would testify as an expert, amounts to a discovery violation. *See Luis v. State*, 851 So. 2d 773, 776 (Fla. 2d DCA 2003). Therefore, the State's failure to list Valez and Lipitore as expert witnesses, and the failure to list Ringfeld as a witness, effectively constituted a discovery violation. Accordingly, counsel's failure to investigate or object to the discovery violation arguably would amount to deficient performance.

However, Petitioner must also demonstrate prejudice pursuant to *Strickland*. When a discovery violation is committed, under state law a trial court must conduct a *Richardson* hearing. *See Richardson v. State*, 246 So. 2d 771 (Fla. 1971). A trial court must determine whether the State's discovery violation was (1) inadvertent or willful; (2) trivial or substantial; and (3) prejudicial to the defendant's trial preparation. *Id.* at 775.

At trial, Valez, Lipitore, and Ringfeld testified as experts without objection (Resp. Ex. Y at

---

[2]The exhibit lists Lipitore's name as Liberatore, which is a typographical error.

[3]Rule 3.220(b)(1)(A)(i)(7) has since been amended and now provides that a state prosecutor must provide the names of "expert witnesses who have not provided a report and curriculum vitae or who are going to testify . . . ."

209, 274, 305-08).[4] Valez was qualified as an expert in identifying methamphetamine laboratories, making entry into those laboratories, and dismantling the laboratories. *Id.* at 205-10. Lipitore was tendered as an expert in identifying illicit drugs. *Id.* at 273-74. Finally, Ringfeld was qualified as an expert in fingerprint analysis. *Id.* at 301-02.

Petitioner cannot show that the testimony of these three witnesses resulted in prejudice. Petitioner did not contest the existence of the methamphetamine laboratory, marijuana, or that it was his fingerprint found on the bag of methamphetamine. Instead, Petitioner testified that while he was addicted to methamphetamine, he did not manufacture the drug. *Id.* at 403-04, 424-25. Petitioner testified that Harris was manufacturing the methamphetamine found in his shed. *Id.* at 403-05, 414-16. Petitioner also admitted that his fingerprint was found on the bag, but told the jury that the bag was empty when he touched it. *Id.* at 417-18. Therefore, because Petitioner did not contest any of Valez, Lipitore, or Ringfeld's testimony, he has not established that the State's failure to disclose these witnesses as experts prejudiced his preparation for trial. Thus, Petitioner cannot demonstrate that but for counsel's failure to investigate and object, that the result of trial would have been different. Consequently, Petitioner is not entitled to relief on these claims because he has not shown that the state court's finding was contrary to, or resulted in an unreasonable application of, clearly established federal law.

**Ground Eleven**

Petitioner claims that trial counsel was ineffective for failing to investigate and obtain the deposition of Harris (Dkt. 1 at 25). In support of this claim, Petitioner alleges that despite the fact

---

[4] Defense counsel specifically told the trial court with regard to Lipitore, "Judge, we're familiar with his qualifications. We're not contesting that." *Id.* at 274. Furthermore, defense counsel stated that he was familiar with Valez's qualifications and would stipulate to her expertise. *Id.* at 302.

15

that he told his attorney Harris was the person manufacturing methamphetamine, counsel failed to contact and interview Harris. *Id.* at 26.

Petitioner raised this ground in his 3.850 motion (Resp. Ex. N). The state court summarily denied this ground, stating the following:

> Two of the prerequisites for granting relief on an ineffective assistance of counsel claim for not interviewing and/or presenting a specific witness at trial is that the witness must have been available to testify at trial plus a sufficient explanation as to how the omission of the testimony prejudiced the outcome of the trial. *Highsmith v. State*, 617 So. 2d 825 (Fla 1st DCA 1993); *Palmer v. State*, 683 So. 2d 678 (Fla. 4th DCA 1996). The parties agree in their motion and response that, at the time of the instant trial, Harris was in the Lake County, Florida jail awaiting trial on similar charges. The Defendant apparently takes the position that if Andy Harris was subpoenaed to testify at Defendant's trial, rather than invoking his Fifth Amendment right against self-incrimination, Harris would have testified to committing all of the crimes for which the Defendant was convicted, thereby subjecting Harris to a minimum mandatory 15-year prison sentence as to Count I. A defendant is unable to establish deficient performance or prejudice from counsel's failure to interview or investigate a witness when that witness would not have been available to testify at trial. *Nelson v. State*, 875 So. 2d 579 (Fla. 2004). The Court finds that Defendant has failed to meet his evidentiary burden of proof under *Strickland* because the witness, Harris, would not have testified at trial, the Court further noting that the Defendant's wife testified as a State's witness at trial confirming that the shed in which the meth lab, chemicals and marijuana were discovered incident to the search warrant was the Defendant's shed that he kept padlocked . . . and, at the very least, Defendant visited on a daily basis in the month leading up to his arrest (T, 259-266).

(Resp. Ex. Q) (footnote omitted).

Petitioner provides no evidence that Harris was available and willing to testify at trial or that Harris would have admitted his guilt to the crimes. *See e.g.*, *Bray v. Quarterman*, 265 F. App'x 296, 298 (5th Cir. 2008) ("To prevail on [a claim of ineffective assistance of counsel for failing to call a witness], the petitioner must name the witness, demonstrate that the witness was available to testify and would have done so, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense.") (citation omitted); *United States v.*

16

*Ashimi*, 932 F.2d 643, 650 (7th Cir. 1991) ( "[E]vidence about the testimony of a putative witness must generally be presented in the form of actual testimony by the witness or an affidavit. A defendant cannot simply state that the testimony would have been favorable; self-serving speculation will not sustain an ineffective assistance claim."); *D'Amico v. Sec'y of Dep't of Corr.*, No. 8:11-cv-20-T-27EAJ, 2014 WL 1248071, at *15 (M.D. Fla. Mar. 26, 2014). Therefore, Petitioner's speculative claim will not sustain a claim of ineffective assistance of counsel. Petitioner has failed to meet his burden of proving that the state court unreasonably applied controlling Supreme Court precedent or unreasonably determined the facts in rejecting this claim.

**Ground Twelve**

In Ground Twelve, Petitioner alleges that appellate counsel was ineffective for failing to argue that the trial court improperly imposed a minimum mandatory fifteen-year sentence (Dkt. 1 at 27). Petitioner contends that officers confiscated 330 grams of a liquid substance that contained methamphetamine. *Id.* Petitioner states that because it was never determined how much of the liquid was methamphetamine, the trial court could not use the entire weight of the liquid to sentence him. *Id.* at 27-28. Petitioner raised this claim in his state petition for writ of habeas corpus (Resp. Ex. W). The state appellate court denied the petition without discussion (Resp. Ex. X).

Claims of ineffective assistance of appellate counsel are governed by the same standard applied to trial counsel under *Strickland*. *See Sairras v. Fla. Dep't of Corr.*, 496 F. App'x 28, 34 (11th Cir. 2012) (citing *Heath v. Jones*, 941 F.2d 1126, 1130 (11th Cir. 1991)). The Sixth Amendment does not require appellate counsel to raise every non-frivolous issue. *Id.* Appellate counsel must be allowed to exercise his or her reasonable professional judgment in selecting those issues most promising for review, and "[a] brief that raises every colorable issue runs the risk of

burying good arguments." *Jones v. Barnes*, 463 U.S. 745, 753 (1983). To determine if prejudice occurred, the Court must first review the merits of the omitted claim. *See Heath*, 941 F.2d at 1132. Counsel's performance will be deemed prejudicial if the Court concludes that "the neglected claim would have a reasonable probability of success on appeal." *Id*.

Section 893.135(1)(f)(1)(c), Florida Statutes, provides that any person who knowingly manufactures more than 200 grams of methamphetamine or any mixture containing methamphetamine, but less than 400 grams, shall be sentenced to a minimum mandatory term of fifteen years in prison. At trial, Denise Holmquist ("Holmquist"), senior crime laboratory analyst for the FDLE, testified that she weighed and tested two jars of liquid confiscated from Petitioner's shed (Resp. Ex. Y at 370-76). According to Holmquist, the jars of liquid contained methamphetamine and weighed 130.4 grams and 220.5 grams. *Id.* at 374-76. Petitioner was convicted of trafficking in more than 200 grams and less that 400 grams of methamphetamine (Resp. Ex. C).

The Supreme Court of Florida has stated that "[s]ection 893.135 . . . indicates that the Legislature intended to harshly punish the distribution of controlled substances *or mixtures* of controlled substances." *Greenwade v. State*, 124 So. 3d 215, 228 (Fla. 2013) (emphasis added). The court further held that to sustain a conviction for trafficking in a controlled substance, "the State must chemically prove that each individually wrapped packet contains at least a mixture of a controlled substance before it may combine the contents and determine whether those contents meet the statutory threshold for weight." *Id.* at 239. In the instant case, the State proved that each bag contained "at least a mixture" of methamphetamine. The State then combined those two weights, which totaled more than 200 grams and less than 400 grams. Therefore, the imposition of the

18

fifteen-year minimum mandatory sentences was not in error. Petitioner has not demonstrated that appellate counsel's actions resulted in prejudice because the instant claim would not have been successful on appeal. Accordingly, Ground Twelve does not warrant relief.

## Conclusion

For the foregoing reasons, the Court finds that Petitioner is not entitled to federal habeas relief.

ACCORDINGLY, it is **ORDERED** that:

1. The Petition for Writ of Habeas Corpus (Dkt. 1) is **DENIED**.

2. The **Clerk** shall enter judgment against Petitioner, terminate all pending motions, and close this case.

## CERTIFICATE OF APPEALABILITY AND LEAVE TO APPEAL IN FORMA PAUPERIS DENIED

**IT IS FURTHER ORDERED** that Petitioner is not entitled to a certificate of appealability. A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a certificate of appealability (COA). Id. "A [COA] may issue...only if the applicant has made a substantial showing of the denial of a constitutional right." Id. at § 2253(c)(2). To make such a showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003)

(quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n. 4 (1983)). Petitioner cannot make the requisite showing in these circumstances.

Finally, because Petitioner is not entitled to a COA, he is not entitled to appeal *in forma pauperis*.

**DONE AND ORDERED** in Tampa, Florida, on this 28th day of January, 2015

JAMES D. WHITTEMORE
United States District Judge

Copy to:
*Pro se* Petitioner
Counsel of Record